IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Eric Antonio Samuel, ) | Civil Action No. 8:04-23170-HFF-BHH |
| ) Plaintiff, ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) ) | |
| Officer Larry Turner; Officer Shawn ) Feldner; and Sergeant John Valdaliso, ) ) Defendants. ) ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on December 7, 2004, seeking damages for alleged civil rights violations. On February 18, 2005, the defendants filed a motion to dismiss. The plaintiff filed a response to the motion on March 30, 2005. On July 27, 2005, this court recommended that the defendants' motion be denied. By order dated August 18, 2005, the Honorable Henry F. Floyd adopted the report and recommendation and denied the motion to dismiss. On October 3, 2005, the defendants filed a motion for summary judgment. By order filed October 4, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the motion on November 7, 2005.

## FACTS PRESENTED

The plaintiff is currently incarcerated in the South Carolina Department of Corrections ("SCDC") system. He alleges in his complaint that when he was arrested on November 3, 2004, defendants City of Bennettsville police officers Shawn Felder and Larry Turner beat him while he was in handcuffs. He alleges that Marlboro County Detention Center staff members took him to the emergency room, but that defendants Felder and Turner refused to get medical treatment for him. The plaintiff further alleges that defendant police officer John Valdaliso harassed him for four months by stopping his vehicle and searching him for no reason. He claims that Valdaliso brought "false warrants" against him in August, September, and October, 2004 (comp. 3 - 4). The plaintiff alleges that the actions of the defendants violated his civil rights. In his prayer for relief he states: "I want Justice and these officers to leave me alon[e] with these false warrants and a lawsuit." (comp. at 5). In his response to the motion for summary judgment, the plaintiff requests damages in the amount of $7,707.00.

The defendants submitted affidavits and other exhibits with their motion for summary judgment. In his affidavit, defendant Turner states that he was familiar with the plaintiff's brother, and at the time of the incident in question, the brother had outstanding warrants against him for assault and battery with intent to kill (Turner aff. ¶ 7). Additionally, defendant Turner "knew that [p]laintiff and his brother were involved in the distribution of narcotics within the City of Bennettsville." (*Id.* ¶ 8). Officer Turner arranged a "controlled drug buy" from the plaintiff through a confidential informant. The officers waited and observed the plaintiff sell the confidential informant a quantity of crack cocaine, at which time Officer Turner activated his blue light and tried to stop the plaintiff from leaving the parking lot. Officer Turner states that the plaintiff fled the parking lot by driving over a curb and into oncoming traffic, and that as he was fleeing the plaintiff threw a small plastic bag out of the vehicle. The bag was recovered and later found to contain "a substantial quantity of crack cocaine." (Turner aff. ¶¶ 9 - 19). Officer Turner further states that when the plaintiff stopped his vehicle, he "exited the driver's seat, and dove face down to the

pavement", and the officers restrained the plaintiff on the ground until he could be handcuffed. Officer Turner states that he did not strike the plaintiff or use any weapon on him, and that he did not see anyone else strike the plaintiff or use a weapon. According to Officer Turner, the plaintiff never complained about being injured in any way, and the defendant further noted that if the plaintiff had complained, he (Officer Turner) would have called an ambulance to come to the scene to have the plaintiff examined (Turner aff. ¶ 32 - 34).

According to the affidavits of Officer Turner and the other defendant officers, the plaintiff's main concern at the time of the incident was whether he could become a confidential informant to try to "work off" his charges. When Officer Turner told the plaintiff that he was not interested in using him as a confidential informant, the plaintiff demanded that he be allowed to speak with the Bennettsville Chief of Police, Larry McNeill. The plaintiff was transported to the Bennettsville Police Department to speak with Chief McNeill, who told the plaintiff that he would not overrule Officer Turner's decision to not use the plaintiff as a confidential informant. According to Chief McNeill, the plaintiff did not express any complaint about the level of force used against him nor did he complain about any injury (McNeill aff. ¶¶ 14 - 15).

At some point after arriving at the detention center, the plaintiff began complaining about his back hurting. EMS was called and the plaintiff was taken to the hospital where he was examined. (Valdaliso aff. ¶¶ 29 - 32). The medical records from the hospital show that he complained of back pain and was instructed to take over the counter pain relievers as needed. The medical chart also noted an abrasion to the plaintiff's chin.

With regard to the plaintiff's claim of harassment and "false warrants" by defendant Valdaliso, Officer Valdariso states in his affidavit that he is familiar with the plaintiff's brother, who at the time of the incident had outstanding warrants against him (Valdariso aff. at ¶ ¶ 6 -7). Officer Valdariso also states that on several occasions prior to the plaintiff's arrest he observed the plaintiff's brother riding as a passenger in the plaintiff's vehicle. The officer attempted to apprehend the plaintiff's brother, but each time the brother

fled prior to Officer Valdariso being able to stop the vehicle. According to this defendant, "on each occasion that [he] stopped Plaintiff's vehicle, [he] believed that [he] had a reasonable suspicion to do so where [he] observed a wanted felon within the vehicle." (Valdariso aff. ¶ 13).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *"False Warrant" Claim*

The plaintiff alleges that the defendants brought "false warrants" against him. It is unclear what constitutional claim the plaintiff is making. However, to the extent that he is seeking to recover damages for an allegedly unconstitutional arrest or conviction, such a claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.

5

(Internal citations and footnotes omitted).

It is unclear whether the plaintiff is complaining about the warrants against him or those against his brother. To the extent that he is alleging that the warrants against him were not supported by probable cause, the claim fails under *Heck*. The plaintiff ultimately pled guilty to the charges against him arising out of this incident and there is no evidence that the convictions have been overturned or otherwise invalidated. To the extent that the plaintiff is complaining about the "unlawful" traffic stops during which he was questioned about his brother's whereabouts, there is simply no evidence in the record that a constitutional violation occurred. Accordingly, this claim must be dismissed.

### *Excessive Force Claim*

The plaintiff alleges that the defendants used excessive force against him during his arrest. Where a plaintiff alleges that police officers have used excessive force, the officers' actions and judgment are measured by a standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). Because "police officers are forced to make split-second judgments - in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation," 490 U.S. at 397, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. *Id.* at 396.

*Graham* sets forth several factors to consider in analyzing an excessive force claim. These factors include "the severity of the crime at issue," whether the "suspect poses an immediate threat to the safety of the officers or others," whether the suspect is "actively resisting arrest or attempting to evade arrest by flight," and the extent of the suspect's injury.

Applying these factors to this case, it is clear that the plaintiff was fleeing from the police and that he was attempting to evade arrest. Two of the defendants, Officers Turner and Feldner, both testified that they had prior experience with the plaintiff. Based on that experience, they knew that the plaintiff had a history of drug arrests and a history of violent crimes and that there was an outstanding warrant for assault and battery with intent to kill out on the plaintiff's brother. A reasonable officer under these circumstances, would have concern about the seriousness of the situation, the threat to their safety and the risk to others.

Moreover, the court must also look at the extent of the injuries sustained by the plaintiff. The plaintiff suffered a scrape on his nose and back pain. Other than the plaintiff's conclusory allegations, there is no evidence that he was beaten by the defendants. The medical evidence in the record shows that he was examined at the hospital and was released with instructions to take tylenol or ibuprofen as needed. There is no objective medical evidence in the record indicating that the plaintiff suffered anything other than superficial injuries. Clearly, he has not shown that his injuries were serious or life-threatening. *See Riley v. Dorton*, 115 F.3d 1159, 1163-64 (4th Cir.) (*en banc*), *cert. denied*, 522 U.S. 1030 (1997) (generally, absent extraordinary circumstances, a showing of *de minimus* injury serves as conclusive proof that only *de minimus* force was used, which cannot form the basis of a successful excessive force claim).

The facts and circumstances in the record disclose substantial grounds for the police officers to have acted in the manner they did. The plaintiff was actively fleeing arrest. Once he was apprehended he was restrained using reasonable police procedure. Moreover, the plaintiff has not shown that he received anything other than *de minimus* injury. Accordingly, this claim must be dismissed.

***Denial of Medical Care Claim***

To the extent that the plaintiff's complaint is construed to allege a claim of medical indifference, this claim also fails. "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990), (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988).

The government is "obligated to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that the has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id*. at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id*. at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Benson v. Cady*, 761 F.2d

335, 339 (7th Cir. 1985).  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or would be apparent to a reasonable person in the defendant's position.  *Id.*  Nevertheless, mere negligence or malpractice does not violate the eighth amendment.  *Estelle*, 429 U.S. at 106.

The plaintiff here has failed to show a serious medical need.  Moreover, his complaint clearly alleges that he received medical care.  The affidavits and the medical records show that the plaintiff was transported to the hospital, where he was examined and released.  Therefore, his claim for a denial of medical care must be dismissed.

### *Qualified Immunity*

The defendants also argue that they are entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id*.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court has held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  *Wilson*, 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there

"because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that the defendants' motion for summary judgment be granted.

s/ Bruce H. Hendricks
United States Magistrate Judge

March 22, 2006
Greenville, South Carolina